RECORD NO. 12-2126

In The

# United States Court of Appeals
### For The Fourth Circuit

## SWATCH AG (SWATCH SA) (SWATCH LTD.),

*Plaintiff – Appellant*,

**v.**

## BEEHIVE WHOLESALE, LLC, a limited liability company,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## AT ALEXANDRIA

_____

## PUBLIC FINAL REPLY BRIEF OF APPELLANT

_____

**Thomas P. Gulick**
**COLLEN IP INTELLECTUAL PROPERTY LAW, P.C.**
**The Holyoke-Manhattan Building**
**80 South Highland Avenue**
**Ossining, New York 10562**
**(914) 941-5668**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................1

SUMMARY OF THE ARGUMENT ....................................................1

ARGUMENT ....................................................................................4

    A.    The SWAP Mark is Merely Descriptive ...............................4

        1.    The Standard of Review for Descriptiveness is Clear Error .................................................................................4

        2.    The Prima Facie Presumption of Suggestiveness is Not Conclusive..........................................................................4

        3.    Evidence of the SWAP Mark's Descriptiveness was Not Properly Addressed .....................................................5

        4.    Beehive Seeks to Perpetuate the Clear Error of TTAB and the District Court.................................................9

    B.    A Likelihood of Confusion Exists Between the SWAP and SWATCH Marks...................................................................13

        1.    Beehive Conceded that the SWATCH Marks are Strong and Distinctive ........................................................14

        2.    Beehive Concedes that the Parties' Goods are Identical ..........15

        3.    Similarity of the Facilities.........................................16

        4.    Similarity of Advertising ...........................................16

        5.    Defendant's Intent.....................................................17

6.    Actual Confusion ....................................................................18

7.    Sophistication of the Consuming Public...................................19

8.    Similarity of the Marks ...........................................................19

      a.    Beehive, the TTAB and the district court placed too much emphasis on the disparate meanings of the SWATCH and SWAP trademarks...........................19

      b.    The TTAB and district court did not consider the similarity of the marks in the commercial context.........20

      c.    The identical nature of the goods warranted a lessened threshold for finding similarity .......................23

CONCLUSION ...........................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anheuser-Busch, Inc. v. L & L Wings, Inc.*,
    962 F.2d 316 (4th Cir. 1992) ........................................................................20

*Century 21 Real Estate*,
    970 F.2d 874, 23 U.S.P.Q. 2d 1698 (Fed. Cir. 1992)....................................24

*Clark, Inc. v. Resnick*,
    219 U.S.P.Q. (BNA) 619,
    1982 U.S. Dist. LEXIS 10302 (D.R.I. Oct. 8, 1982)................................3, 18

*Coach Services, Inc. v. Triumph Learning LLC*,
    668 F.3d 1356 (Fed. Cir. 2012) ..................................................................7, 9

*Communications Satellite Corp. v. Comcet, Inc.*,
    429 F.2d 1245 (4th Cir. 1970) ......................................................................18

*Doe v. Menefee*,
    391 F.3d 147 (2d Cir. 2004) ...........................................................................8

*Exxon Corp. v. Texas Motor Exchange, Inc.*,
    628 F.2d 500 (5th Cir. 1980) ........................................................................24

*George & Co., LLC v. Imagination Entm't Ltd.*,
    575 F.3d 383 (4th Cir. 2009) ..................................................................17, 20

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
    710 F.2d 1565 (Fed. Cir. 1983) ....................................................................22

*Humphrey v. U.S. Attorney General's Office*,
    279 Fed. Appx. 328 (6th Cir. 2008) .............................................................15

*In re Amer. Soc'y of Clinical Pathologists, Inc.*,
    442 F.2d 1404, 169 U.S.P.Q. 800 (C.C.P.A. 1971) ......................................11

*In re Bayer Aktiengesellschaft*,
    488 F.3d 960 (Fed. Cir. 2007) .......................................................................4

*In re Chamber of Commerce of the U.S.*,
    675 F.3d 1297, 102 U.S.P.Q. 2d 1217 (Fed. Cir. 2012).................................12

*Landrau-Romero v. Banco Popular de P.R.*,
    212 F.3d 607 (1st Cir. 2000)...................................................................14, 15

*Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.*,
    43 F.3d 922 (4th Cir. 1995) ....................................................................18, 20

*Murray v. Geithner*,
    763 F. Supp. 2d 860 (E.D. Mich. 2011) ......................................................15

*Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004) ....................................................................23

*One Indus., LLC v. Jim O'Neal Distrib.*,
    578 F.3d 1154 (9th Cir. 2009) ......................................................................21

*Petro Stopping Ctrs., L.P. v. James River Petroleum*,
    130 F.3d 88 (4th Cir. 1997) ...................................................................1, 4, 5

*Pizzeria Uno Corp. v. Temple*,
    747 F.2d 1522 (4th Cir. 1984) .......................................................4, 5, 11, 19

*Recot, Inc. v. Becton*,
    214 F.3d 1322 (Fed. Cir. 2000) ....................................................................19

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*,
    227 Fed. Appx. 239 (4th Cir. 2007) .............................................................20

*Sabinsa Corp. v. Creative Compounds, LLC*,
    609 F.3d 175 (3d Cir. 2010) .........................................................................24

*Sally Beauty Co. v. Beautyco, Inc.*,
    304 F.3d 964 (10th Cir. 2002) ......................................................................22

*Sara Lee Corp. v. Kayser-Roth Corp.*,
    81 F.3d 455 (4th Cir. 1996) ...................................................................1, 4, 11

*Smith v. Guilford Bd. of Educ.*,
    226 Fed. Appx. 58 (2d Cir. 2007) .........................................................14, 15

*Southwestern Bell Telephone Co. v.*
*Nationwide Independent Directory Service, Inc.*,
    371 F. Supp. 900 (W.D. Ark. 1974) ............................................................11

*Swatch S.A. v. Beehive Wholesale, L.L.C.*,
    888 F. Supp. 2d 738 (E.D. Va. 2012) ....................................................*passim*

*Taylor v. Maddox*,
    366 F.3d 992 (9th Cir. 2004) .........................................................................8

*U.S. Search, LLC v. U.S. Search.com Inc.*,
    300 F.3d 517 (4th Cir. 2002) .....................................................................7, 9

*U.S. v. Wooden*,
    693 F.3d 440 (4th Cir. 2012) .........................................................................8

## RULE

Fed. R. Civ. P. 52(a)(1) ..............................................................................19

## OTHER AUTHORITIES

2 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 11:64 (4th ed. 2001) .........7, 9

3 J. Thomas McCarthy,
*McCarthy on Trademarks and Unfair Competition* § 23:20.1 (4th ed. 2003) ........24

Trademark Manual of Examining Procedure § 1209.01(b) (Oct. 2012 Ed.)...........11

## INTRODUCTION

Swatch respectfully seeks reversal of the Eastern District of Virginia's affirmance of the Trademark Trial and Appeal Board ("TTAB") Order, and its dismissal of the trademark infringement, unfair competition and dilution counts. *Swatch  S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738 (E.D. Va. 2012).

## SUMMARY OF THE ARGUMENT

The trademark SWAP is merely descriptive.  In addressing the district court's analysis of descriptiveness, Beehive espouses a higher standard of review for this issue beyond "clearly erroneous."  A district court's determination or affirmance that a mark is not descriptive is reviewed for clear error. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455 (4th Cir. 1996). Despite Beehive's arguments, determinations of suggestiveness and descriptiveness are not conclusive and may be rebutted. *Petro Stopping Ctrs., L.P. v. James River Petroleum*, 130 F.3d 88, 93 (4th Cir. 1997).  Swatch provided substantial evidence in the district court and the TTAB rebutting any presumption that the word swap only "suggests," rather than describes, a feature of Beehive's goods.  The district court ignored Beehive's own admissions in deposition testimony, in advertisements and in discovery responses.  Additional evidence establishes third party use of the term "swap" to describe interchangeable watch faces and bands.

1

Swatch presented evidence and arguments that both the TTAB and the district court misapplied the test for descriptiveness, by focusing upon the generalized recitation of goods in the SWAP Application rather than considering the actual and specific goods to which the SWAP mark is applied—watch bands and faces that can be swapped. Beehive argues incorrectly that only reference to the general goods is required.

The foregoing constitutes clear error and merits reversal of the district court's findings on descriptiveness.

The district court erred, as well, with regard to likelihood of confusion as applied to its substantive rulings concerning trademark infringement and dilution and affirming the TTAB in allowing registration.   Both Beehive and the district court erroneously place too much emphasis upon the purported meanings of the SWATCH and SWAP marks to find that the marks were dissimilar.  Stressing the distinct meanings of the marks, Beehive tellingly avoids any discussion of the term SWAP, avoiding the descriptive application of the term to the goods.  The district court neglected to apply the lowered threshold, which is mandated when analyzing similarity between marks applied to identical goods, and failed to give greater weight to similarities in the marks.  Consequently, the district court's determination as to the similarity of the marks is clearly erroneous and merits reversal.

The issues of advertising and facilities were similarly weighed against Swatch despite evidence that the parties both use similar channels of trade, including gift stores, department stores and the Internet. The district court failed to find any bad faith intent on Beehive's part despite its knowledge of the SWATCH mark for watches prior to its adoption of the SWAP mark for the same goods. Beehive cannot save itself by asserting that designs, taken from its 2006 catalog, predate those submitted by Swatch, from a printout of Swatch's website, because Beehive fails to account for the core collection of SWATCH brand watches which remain the same from year to year. J.A. 636-637 (82:13-83:19). Beehive's mimicry of Swatch designs shows bad intent and the district court erred in overlooking it.

The district court too heavily weighed actual confusion given [


] *Clark, Inc. v. Resnick*, 219 U.S.P.Q. (BNA) 619, 1982 U.S. Dist. LEXIS 10302, *16-17 (D.R.I. Oct. 8, 1982). The district court disregarded the sophistication of the consumer, a factor which favors Swatch.

The district court's likelihood of confusion analysis is fatally flawed and merits reversal. The district court's holdings on trademark infringement, dilution and affirmance of the TTAB decision are all derived from the district court's clearly erroneous likelihood of confusion analysis.

# ARGUMENT

A.    The SWAP Mark is Merely Descriptive

The word swap means "(1) to trade one thing for another; (2) to exchange; (3) an exchange of one thing for another." J.A. 446-449.  Nothing in Beehive's arguments overcomes the errors of the TTAB and district court.

*1.    The Standard of Review for Descriptiveness is Clear Error*

A mark's placement on the fanciful-suggestive-descriptive-generic continuum is a question of fact.  *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964 (Fed. Cir. 2007).  A district court's determination or affirmance that a mark is not descriptive is thus reviewed for clear error. *Sara Lee Corp.*, 81 F.3d 455.  Beehive alleges that the standard is even more deferential in situations involving review of U.S. Trademark Office decisions.  (Beehive's Opposition Brief, p. 8).  However, no case cited by Beehive offers support for a further heightened standard of review.

*2.    The Prima Facie Presumption of Suggestiveness is Not Conclusive*

While the U.S. Trademark Office's determinations as to descriptiveness are to be accorded deference, the Trademark Office's pronouncements are "not conclusive."  *Petro Stopping Ctrs., L.P. v. James River Petroleum*, 130 F.3d 88, 93 (4th Cir. 1997) *citing Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1534 (4th Cir. 1984).  Rather, "[t]he fact that the PTO does not view a mark as descriptive serves

only as prima facie evidence that the mark is suggestive." *Petro Stopping Ctrs.*, 130 F.3d at 93. Beehive's suggestion that this prima facie presumption is somehow irrefutable and "dooms Swatch's argument" is false. (Beehive's Opposition Brief, p. 28).

A prima facie presumption of suggestiveness may be rebutted. *Petro Stopping Ctrs.*, 130 F.3d at 93 *citing Pizzeria Uno*, 747 F.2d at 1534. Swatch presented very significant, substantial evidence in the proceedings below rebutting any presumption of suggestiveness including (i) admissions made by Beehive's principals, (ii) Beehive's advertising, and (iii) Beehive's responses to discovery. (Swatch Opening Brief, p. 44-55). The district court's failure to consider and address this evidence was clear error meriting reversal.

3.    *Evidence of the SWAP Mark's Descriptiveness was Not Properly Addressed*

Evidence as to the descriptiveness of the SWAP mark is considerable. The evidence included deposition testimony of Beehive's principals who testified under oath that the word "swap" plainly describes a function of their goods. The evidence also includes advertising touting the interchangeable trait of the SWAP watch dials and bands, as well as Beehive's own discovery responses, the dictionary definition of the term "swap" and evidence regarding third party use. Neither the TTAB nor the district court accorded this evidence due consideration.

5

The TTAB disregarded Beehive's admissions of descriptiveness, claiming that Beehive's officers merely "followed the language used by the attorneys who questioned them" (J.A. 287) and that "the contradictory statements of [Beehive's] officers demonstrate[s] little more than a lack of understanding of the significance of the term comprising their mark." J.A. 289. The TTAB went on to speculate that "[Beehive's] witnesses are not sophisticated in trademark law or the significance of particular words as they relate to trademark principles." J.A. 289.

But there is neither testimony from Beehive's officers nor any other evidence to support the TTAB's assertions on this point. No facts alleged by Beehive corroborate or even suggest that Beehive's officers lacked an understanding of their testimony regarding their basis for adoption of the SWAP mark. Beehive's officers repeatedly recounted, in sworn testimony, that the mark SWAP was selected specifically because it described the interchangeable function of the products bearing the SWAP mark. *See* J.A. 227-229 (11:13-12:21); J.A. 246-248 (24:18-26:7). Even the assertion that Beehive's principals were unsophisticated in trademark law is irrelevant to the inquiry, since the colloquial meaning of the word "descriptive" is almost identical to its meaning in trademark law. Beehive has provided no evidence to support the idea that the witnesses did not understand the meaning of "descriptive."

Moreover, Beehive's principals do not need to be knowledgeable in trademark law to properly comprehend and articulate the meaning and significance of the term "swap" as applied to watch bands and dials that can be swapped in a number of different combinations.  Indeed, the proper inquiry for descriptiveness requires the consideration of the mark in connection with the particular goods or services being offered, the context in which it is being used, and the possible significance that the term would have to the **_average purchaser_** (not a trademark practitioner) of the goods because of the manner of its use or intended use. *U.S. Search, LLC v. U.S. Search.com Inc*., 300 F.3d 517, 524 (4th Cir. 2002) (*citing* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (hereinafter, *McCarthy*) § 11:64 (4th ed. 2001)); *see also Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1378 (Fed. Cir. 2012).  Thus, even if Beehive's principals are unsophisticated in trademark law, this actually serves as further evidence that the SWAP mark describes a primary function of the goods. In this regard, Beehive's COPPERTONE® hypothetical pales.  There is no word "coppertone" and no dictionary definition.  No Coppertone executive could admit that the product "coppertones" the skin.  Beehive's own testimony that swapping bands and watch faces is a significant function of its products sold under the SWAP mark, and that the SWAP mark was selected because it conveyed this function is clear, unambiguous and unrebutted evidence of descriptiveness.

7

In addition to Beehive's testimonial admissions, and their advertisements, the evidence shows that third parties commonly use the term "swap" because of its descriptive nature. (E.g. PUMA SWAP WATCH et al., *see* J.A. 450-463, 472, 481, 484-504).

The district court failed to weigh testimony and the evidence which clearly conflicted with the TTAB's determination and which highlighted a clear gap in Beehive's evidentiary presentation.  Such failure amounts to reversible error. *U.S. v. Wooden*, 693 F.3d 440, 454 (4th Cir. 2012) ("[F]ailure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding."); *see also Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) ("We have found a district court's factual findings to be clearly erroneous where the court has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation.").

The district court did not articulate any basis for disregarding Swatch's evidence, which contradicted the TTAB's determination on descriptiveness.  This failure to reconcile key parts of the record casts doubt on the process by which the district court affirmed the TTAB's decision and, consequently, on the correctness of the affirmance. *Wooden*, 693 F.3d at 454 (*quoting Taylor v. Maddox*, 366 F.3d 992, 1007-08 (9th Cir. 2004)).

4.    *Beehive Seeks to Perpetuate the Clear Error of TTAB and the District Court*

A determination as to descriptiveness is not made in the abstract. *U.S. Search, LLC*, 300 F.3d 517 at 524 (*citing* 2 *McCarthy* § 11:64); *see also Coach Services, Inc.*, 668 F.3d at 1378. The mark must be considered in connection with the particular goods or services being offered, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use. *Id*.

As Beehive concedes, the TTAB looked only to Beehive's identification of goods in Application Serial No. 78459527 for "watch faces, ribbon watch bands, slide pendants, and beaded watch bands" in International Class 14, in considering the descriptiveness issue. (Beehive's Opposition Brief, p. 33). However, the TTAB did not properly acknowledge that interchangeable and swappable watch faces and bands are merely a subset of "watch faces, ribbon watch bands, slide pendants, and beaded watch bands." If the mark describes those features, then the entire list of goods fails (unless Beehive sought some amendment; which it never

9

did).[1]  The district court similarly examined the SWAP mark without reference to the actual nature of the goods on which the mark is used  *See Swatch S.A.*, 888 F. Supp. 2d at 758 ("There is nothing in the dictionary definition of SWAP to indicate that the term merely describes watch bands, watch faces, or slide pendants.") (*quoting* the TTAB decision).

Seeing that Beehive sells interchangeable watch faces and bands, a consumer clearly understands that a feature or characteristic of these goods is the ability to swap different bands and dials.  This is the very definition of descriptiveness.  The district court and the TTAB both failed to apprehend that this analysis requires a look at the goods encountered by consumers in the marketplace. This is the relevant point of inquiry. Interchangeable watch straps are watch straps and hence fall under the goods identified in the trademark application.  The TTAB and the district court both improperly disregarded the nature of Beehive's goods, relying solely on the phrasing used in the SWAP Application, without accepting that the particular goods on which the mark is used and the context in which the SWAP mark is being used.

---

[1] The USPTO Examining Attorney reviewing Beehive's Trademark Application was similarly presented only with Applicant's recitation of goods which identifies "Watch faces, ribbon watch bands, slide pendants, and beaded watch bands" in Class 14.  J.A. 161-162.  Accordingly, Beehive's assertion that its SWAP mark was deemed suggestive by the Examining Attorney at the U.S. Patent and Trademark Office (Beehive's Opposition Brief, p. 28) is not necessarily borne out by the record and suggests that Beehive claim of the prima facie presumption of suggestiveness is improper.

While, Beehive argues that only an examination of the general nature of the goods is required when analyzing descriptiveness, (Beehive's Opposition Brief, pp. 33-34), it provides no case law to support this assertion. Indeed, applying Beehive's logic would result in very few findings of descriptiveness. For example, the mark YELLOW PAGES (*Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F. Supp. 900, 909 (W.D. Ark. 1974)) if only examined in conjunction with the general goods to which it is applied, a business directory, would result in the conclusion that the mark is arbitrary. It is only after one learns of the specific nature of the goods, business directories and advertisements printed on yellow pages, that the mark YELLOW PAGES could be considered descriptive. While the holdings of the TTAB and district court are afforded deference, this Court owes "no deference to …findings if they are derived as a result of the court's misapplication of the law." *Sara Lee Corp.*, 81 F.3d at 460 (4th Cir. 1996) *citing Pizzeria Uno*, 747 F.2d at 1526.

Additionally, a term may be considered merely descriptive if the identified goods or services fall within a subset of goods or services indicated by the term. *See* Trademark Manual of Examining Procedure § 1209.01(b) (October 2012 Edition); *see also In re Amer. Soc'y of Clinical Pathologists, Inc.*, 442 F.2d 1404, 1406-07, 169 U.S.P.Q. 800, 801 (C.C.P.A. 1971) (holding that REGISTRY OF MEDICAL PATHOLOGISTS was descriptive of certain claimed services that

were implicitly subsumed within service of providing a registry of medical

pathologists and of additional claimed services that were "supporting, ancillary or

auxiliary to the primary function" of applicant's registry services). *See also In re*

*Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1301-02, 102 U.S.P.Q. 2d

1217, 1220 (Fed. Cir. 2012) (NATIONAL CHAMBER held descriptive because

"substantial evidence supports the TTAB's determination that the designated

business and regulatory data analysis services are within the scope of traditional

chambers of commerce activities" of "promoting the interests of businessmen and

businesswomen").  Given that watches in International Class 14 subsume and

include swappable or interchangeable watch faces and bands, the SWAP mark is

merely descriptive.

The district court did not properly articulate its consideration of the evidence

and issues raised on appeal.  Beehive does nothing more than muddy the waters by

suggesting that a heightened standard of review applies to this issue and by

claiming that the TTAB's determination on the matter is conclusive.  Beehive

cannot establish that the district court properly addressed the testimony and

evidence of record with regard to descriptiveness.  Rather it advocates an

examination of the evidence without regard for the actual goods to which the

SWAP mark is applied and without regard to the fact that even reliance upon the

literal identification of goods in Beehive's trademark application, when properly

construed, covers all types of straps and watch parts, including those that maybe swapped in different combinations. In light of the evidence, the district court's holding as to descriptiveness should be overturned.  As a result, Beehive should be denied a trademark registration.

B.     A Likelihood of Confusion Exists Between the SWAP and SWATCH Marks

The district court further erred when it found no likelihood of confusion. The only factor accurately determined by both the TTAB and district court was the similarity of the goods.  The district court rectified the TTAB's clear error on the strength of the SWATCH marks, but then failed to properly analyze several crucial likelihood of confusion factors, including similarity of the facilities, similarity of advertising and Beehive's bad intent.  The district court accorded improper weight to the actual confusion factor and refused to consider the sophistication of the consumers.  The determination of the similarity of the marks was the most significant error made by the TTAB, which the district court repeated and affirmed.  These oversights resulted in clearly erroneous determinations of likelihood of confusion.

The district court based both its affirmance of the TTAB's dismissal of Swatch's Opposition to Beehive's mark (Count I) and its judgment in favor of Beehive on the federal and common law trademark infringement counts and the dilution claim  (Counts II-VI) (*Swatch S.A.*, 888 F. Supp. 2d at 760) on its

13

erroneous likelihood of confusion findings.  The district court's likelihood of

confusion findings should thus be reversed and Beehive should be denied

registration of the SWAP mark as it is likely to be confused with the SWATCH

marks in Class 14.  The district court's ruling in favor of Beehive as to the dilution

claim and the federal and common law trademark infringement counts should

similarly be overturned and a ruling on these counts should be entered in Swatch's

favor.

1.    *Beehive Conceded that the SWATCH Marks are Strong and
       Distinctive*

Beehive does not challenge the district court's findings that the SWATCH

marks are "inherently distinctive," that Swatch's SWATCH marks are

incontestable, that Beehive presented "no evidence that other parties use and

therefore weaken Swatch's mark," and that the SWATCH Marks are commercially

strong.  *See* Beehive's Opposition Brief, p. 2, and *Swatch, S.A.*, 888 F. Supp. 2d at

748, 749.[2]  This issue is therefore conceded.  *Smith v. Guilford Bd. of Educ.*, 226

Fed. Appx. 58, 65 (2d Cir. 2007) (where an argument was not submitted in motion

papers it was deemed waived); *Landrau-Romero v. Banco Popular de P.R.*, 212

F.3d 607, 612 (1st Cir. 2000) (where appellant failed to raise an argument in

---

[2] Beehive may not challenge the admission of Swatch's evidence relating to the
strength and fame of the SWATCH marks. *See* Beehive's Opposition Brief, pp. 2-
3.  By raising this issue for the first time in its Opposition Brief to Swatch's Appeal
which does not assert any evidentiary challenges, Beehive has waived such an
evidentiary challenge.

opposition to the appellee's motion for summary judgment, the issue has been waived); *Murray v. Geithner*, 763 F. Supp. 2d 860, 871-872 (E.D. Mich. 2011) (finding that plaintiff conceded issues, where it failed to analyze a prong of a test and declined to respond to arguments advanced in defendant's motion papers) (*citing Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008)).

   2.    *Beehive Concedes that the Parties' Goods are Identical*

Both the district court and the TTAB found that this factor weighs in favor of Swatch. *Swatch S.A.*, 888 F. Supp. 2d at 752. Beehive's Brief omits any mention of the similarity of the goods factor of the likelihood of confusion analysis. Accordingly, Beehive concedes that the parties' goods under the SWATCH and SWAP marks are similar, if not, identical. *Smith*, 226 Fed. Appx. at 65 (where an argument was not submitted in motion papers it was deemed waived); *Landrau-Romero*, 212 F.3d at 612 (where appellant failed to raise an argument in opposition to the appellee's motion for summary judgment, the issue has been waived); *Murray*, 763 F. Supp. 2d at 871-872 (finding that Plaintiff conceded issues, where it failed to analyze a prong of a test and declined to respond to arguments advanced in defendant's motion papers) (*citing Humphrey*, 279 Fed. Appx. at 331 (6th Cir. 2008)).

### 3.      Similarity of the Facilities

Beehive misapprehends Swatch's argument as to the similarity of the parties' facilities.  As Swatch previously noted, the parties offer identical and related goods under their respective marks. Such goods are distributed in identical channels of trade—department stores, gift stores and on the Internet.  *See* J.A. 270 ¶ 25, 273-274 ¶¶ 62-66; J.A. 623-624 (8:19-9:9), 625-626 (10:8-11:8), 627 (17:9-25), 645-646 (125:10-126:18), 649-650 (131:18-132:3);  J.A. 349-370; J.A. 255 (10:10-14); J.A. 318, at Interrogatory No. 6; J.A. 258-259 (8:12-9:20), 266 (69:7-14).

The evidence before the district court established that Swatch and Beehive compete in a similar manner, in overlapping markets.  As a result, consumers encounter the parties' respective marks in these facilities in a similar manner.  The district court's holding as to this factor was clear error and this factor weighs in favor of Swatch.

### 4.      Similarity of Advertising

The district court committed clear error in ruling that this factor favors Beehive and Beehive's Brief only seeks to reinforce the error.  As previously noted, there is at least some overlap in the parties' advertising, such as advertising through the Internet.  Furthermore, as established in Swatch's Opening Brief (pp. 35-36) and above, the parties compete in a similar manner in overlapping markets,

supporting a finding that this factor weighs in Swatch's favor. *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009) (affirming that the similarity of the facilities and similarity of advertising weighed in plaintiff's favor because the parties competed in a similar manner in overlapping markets). This factor would be neutral as to both parties at best and the district court's finding to the contrary is reversible error.

5.    *Defendant's Intent*

Beehive's bad intent is evidenced by its imitation of Swatch watch designs. (*See* Swatch Opening Brief, pp. 31-34). Beehive's argument to the contrary is misleading. Even if the images of the Swatch watches were taken from a 2009 printout of Swatch's website, Swatch presented evidence that some of the relevant watch designs have been in existence for years, with some designs even dating back to 1986, as part of Swatch's core collection. J.A. 636-637 (82:13-83:19). ("we do keep a core collection, it's carried, continually being carried year to year."). As such, Beehive's objection to the date of the printout itself raises no true issue.

Beehive's claim that it is not imitating Swatch designs because it copied some elements but did not identically and uniformly copy every aspect of Swatch's watch designs (*see* Beehive's Opposition Brief, p. 17) is equally unavailing, and unsupported by any authority.

The district court's finding is also clearly erroneous given that "[l]ack of guile is immaterial." *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1249 (4th Cir. 1970).  Even if Beehive were deemed to have no deliberate intent to piggyback on Swatch's goodwill, this factor would be neutral in the analysis and would not weigh for or against a likelihood of confusion.  The district court, in finding no bad intent on the part of Beehive, erred in light of the evidence.

### 6.    *Actual Confusion*

The absence of actual confusion is not conclusive, despite Beehive's claims. Indeed, "this Court has emphasized that a trademark owner need not demonstrate actual confusion." *Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). The district court weighed this too heavily. Moreover, the district court failed to account for or even address [

] J.A. 657 (stipulated sales for SWAP products). *See Clark, Inc.*, 1982 U.S. Dist. LEXIS at *16-17 (actual confusion not significant in likelihood of confusion analysis in the case of two similar marks competing in the same market with the same product, where defendant had not been a vigorous competitor).  Accordingly, it was an error for the district court to emphasize this factor in its analysis.

18

7.    *Sophistication of the Consuming Public*

The district court made a conclusory determination as to the sophistication of the consuming public in its analysis of the similarity of the goods factor. The district court failed, in accordance with Fed. R. Civ. P. 52(a)(1), to provide its analysis of this factor and how it arrived at the conclusion that the products' prices lessen the likelihood of confusion. The evidence contradicts the district court's conclusion. Contrary to Beehive's assertions, a feature of SWATCH brand watches is the ability to easily swap out dials and bracelets. *See* J.A. 596-597 (12:18-13:24). Additionally, Swatch bands are available for purchase separately allowing customers to customize their watches to their fashion, taste and mood. J.A. 629-630 (19:5-20:8) and J.A. 651-655. At these low price points consumers generally exercise less care and are therefore not deemed sophisticated, resulting in a heightened likelihood of confusion. *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000).

8.    *Similarity of the Marks*

　　a.    Beehive, the TTAB and the district court placed too much emphasis on the disparate meanings of the SWATCH and SWAP trademarks.

The overarching test for the "similarity of the marks" factor is whether there exists a "similarity in appearance and sound which would result in confusion." *Pizzeria Uno Corp.*, 747 F.2d at 1534. This is further corroborated by subsequent

19

Fourth Circuit precedent noting that marks must merely be "sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed. Appx. 239, 244 (4th Cir. 2007) (*quoting Lone Star Steakhouse & Saloon*, 43 F.3d at 936.

While marks may be evaluated for similarity based upon sight, sound and meaning, (*George & Co., LLC*, 575 F.3d at 396) the case law does not support the contention that the meaning of the marks is paramount, to the detriment of the sight and sound, in the similarity analysis. Rather, in the face of evidence of the similarity of the dominant portions of the mark, the similarity of the marks as used in commerce and the identical nature of the goods to which the marks are applied, the dissimilarity of meaning is of little bearing in this analysis.

> b.  The TTAB and district court did not consider the similarity of the marks in the commercial context.

By weighing the connotation more heavily than the sight and sound of the marks, the TTAB and the district court both committed clear error. Analyzing the similarity of the marks requires an examination of "the allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992). Consumers encounter the parties' SWAP and SWATCH goods in a store or while browsing the parties' Internet websites. *See* J.A. 270 ¶25, 273-274 ¶¶ 62-66; J.A. 623-624 (8:19-9:9),

625-626 (10:8-11:8), 627 (17:9-25), 645-646 (125:10-126:18), 649-650 (131:18-132:3);  J.A. 349-370; J.A. 255 (10:10-14); J.A. 318 at Interrogatory No. 6; J.A. 258-259 (8:12-9:20), 266 (69:7-14).    Accordingly, sight would be significantly more important in the analysis of the similarity of the marks than sound or meaning.  *See One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1162-1163 (9th Cir. 2009) (noting where consumer confusion would occur as motocross enthusiasts select helmets inside a store or during online browsing, sight is significantly more important than sound or meaning when considering the similarity of the marks).

In the market place, Beehive's uses of its SWAP mark include:

   and   

*See* J.A. 317 at Interrogatory No. 2; J.A. 329, 337, 338, 341-343; J.A. 238 (33:18-23), 342 and 343; J.A. 262-263 (14:23-15:2), 108-128; J.A. 264 (16:13-14), 126 and 127; J.A. 265 (18:4-7), 117; J.A. 482-483 (Requests for Admission Nos. 19 and 20).

These uses create the impression of the word "SWATCH" owing to the dominant "S" and the letters "watch."  Further still, Beehive often depicts the term "watch" in a font and style that is similar to the stylized SWATCH Mark.

21

Furthermore, despite Beehive's assertions, incorporation of a generic term into a mark does not remove the term from the mark, but merely indicates that no trademark rights are claimed as to the generic term.  It is appropriate to give consideration to Beehive's incorporation of the term "watch" into its SWAP mark given the commercial context of the use. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion."); *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 n.1 (10th Cir. 2002).

The SWAP mark is used on the face of the watch, directly under the number 12 on the dial.  J.A. 239 (41:13-22).  The SWATCH mark appears in the corresponding position on the dial. *See* J.A. 647-648 (128:11-129:5); J.A. 344-346. Both marks are single syllable terms with hard consonant endings and dominant SWA-prefixes and when used on the dial, (regardless of the position) the SWATCH and SWAP marks are depicted in very small characters. *See id*. and J.A. 320-342.  Distinguishing elements are not easily identified under such circumstances.  Furthermore, the SWAP and SWATCH marks are sometimes used alone, without additional symbols or terms, especially considering such use occurs on watch dials or "on identical goods."

22

Additionally, the SWATCH and SWAP marks are similarly articulated. The SWA-prefix, given the dipthong, has a similar sound whether followed by "P" or "TCH" resulting in a similar sound.

Both the TTAB and the district court should have ascribed greater weight to these similarities than the differences between the two marks. *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1344 (Fed. Cir. 2004) ("In conducting this comparison, similarities weigh more heavily than differences.") (internal quotations omitted).

Given the commercial context in which consumers encounter the SWATCH and SWAP products, and Beehive's use of the SWAP mark in such a commercial context, the visual similarity of the marks is a dominant issue in the 'similarity of the marks' analysis.   If the similarity of the marks analysis was properly applied, the TTAB and district court could not have reached the conclusion that the difference in connotation was the pre-eminent inquiry.  The TTAB and district court's failures to consider the context in which confusion was likely to arise (in stores and on the Internet) and their failure to weigh the similarities more heavily than the differences is clearly erroneous and merits reversal.

c.    The identical nature of the goods warranted a lessened threshold for finding similarity.

There is no question that the parties' goods are identical.  Given the identical nature of the Swatch's and Beehive's goods, the degree of similarity of the marks

required for a finding of likely confusion can be lessened. *See Century 21 Real Estate*, 970 F.2d 874, 877, 23 U.S.P.Q. 2d 1698 (Fed. Cir. 1992) ("When marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion decline."); *see also Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) ("The greater the similarity between the products and services, the greater the likelihood of confusion."); *see also Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183-184 (3d Cir. 2010) (*quoting* 3 *McCarthy* § 23:20.1 (4th ed. 2003) ("The degree of similarity . . . needed to prove likely confusion will vary with the difference in the goods . . .. Where the goods . . . are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.")).

The district court and TTAB accorded far too much weight to their findings of divergent meanings of the SWATCH and SWAP marks. The similarity of the marks in their commercial contexts makes the district court's determination as to the similarity of the marks clearly erroneous.

The district court's determination of several critical likelihood of confusion factors was flawed. Consequently, the district court arrived at a conclusion unsupported by the facts. The district court's analysis of likelihood of confusion was clearly erroneous given the record.

The district court's erroneous findings and conclusions as to trademark infringement and affirmance of the TTAB decision should be reversed, because the findings emanated from the district court's erroneous determination on the issue of likelihood of confusion.

## **CONCLUSION**

The district court's determinations on Swatch's claims are unsupported by the evidence and the law of this Circuit. As established, the district court erred in its evaluation of several key factors, precisely, the similarity of the marks, similarity of facilities, similarity of advertisements and Beehive's intent. All of these favor Swatch. The district court failed to articulate a basis for its findings as to the sophistication of the consuming public.

With regard to descriptiveness, the error is manifest. Swatch presented significant evidence, including numerous admissions made by Beehive in depositions, discovery responses and its own advertising, and in third parties' descriptive uses of the word "swap" for identical goods. The district court held that the TTAB's conclusion was correct without reconciling the evidence presented. The district court repeated the mistake of the TTAB by relying upon the general identification of Beehive's goods as recited in the SWAP Application, rather than looking to the actual goods to which the SWAP mark is applied and was fatally flawed by not recognizing that if the subset of goods is descriptive—

that is, if any trait or feature is descriptive—then application for registration is to be refused.  Swatch respectfully requests that this Court reverse: (1) the district court's affirmance of the TTAB Order dismissing Swatch's opposition and granting registration to Beehive's SWAP mark, and (2) the district court's holding as to the Federal, common law and Virginia trademark infringement claims, the dilution claim and descriptiveness claim.

Respectfully Submitted,

/s/ Thomas P. Gulick
Thomas P. Gulick
Collen IP
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, New York  10562
(914) 941-5668

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*5,706*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>April 30, 2013</u>            <u>/s/ Thomas P. Gulick</u>
                                                    *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 30th day of April, 2013, I caused this Public

Final Reply Brief of Appellant to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> James A. Oliff
> William J. Utermohlen
> OLIFF & BERRIDGE, PLC
> 277 South Washington Street
> Alexandria, Virginia  22320
> (703) 836-6400
>
> *Counsel for Appellee*

I further certify that on this 30th day of April, 2013, I caused the required

copies of the Public Final Reply Brief of Appellant to be hand filed with the Clerk.

/s/ Thomas P. Gulick
*Counsel for Appellant*